## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **COURTNEY CAZAUBON GUIDROZ, ET AL.,**    **Plaintiffs** | **CIVIL ACTION** |
| **VERSUS** | **NO. 25-824** |
| **PHH MORTGAGE CORPORATION,**    **Defendant** | **SECTION: "E" (3)** |

## ORDER AND REASONS

Before the Court is a Motion for Partial Summary Judgment filed by Plaintiffs Courtney Cazaubon, individually and as Trustee of the Evan Cazaubon and Leslie Richard Cazaubon, Jr. Trusts and Independent Administratrix of the Succession of Janet Cazaubon; Leslie Cazaubon, Jr.; and Evan Cazaubon.[1] Plaintiffs seek summary judgment in their favor that Defendant PHH Mortgage Corporation ("PHH") is liable to them for the tort of conversion.[2] PHH filed an opposition to the motion,[3] and Plaintiffs filed a reply.[4]

## BACKGROUND

### I.    Factual Background

Plaintiffs request the Court grant summary judgment in their favor on their claim that the Defendant converted their funds, under Louisiana law, because they are entitled to insurance proceeds paid under a policy covering a house and vacant lot, that served as security for a reverse mortgage.[5] Plaintiffs claim Defendant applied $37,900.32 in

---

[1] R. Doc. 15.
[2] *Id.*
[3] R. Doc. 35.
[4] R. Doc. 36.
[5] R. Doc. 15.

1

insurance proceeds to the remaining debt owed on the reverse mortgage rather than transferring the funds to them.[6]

The Court briefly sets forth the undisputed material facts relevant to the instant motion. Plaintiffs' now-deceased parents (sometimes collectively referred to as "Borrowers") executed a reverse mortgage which, at the time of foreclosure and sale, was serviced by Defendant.[7] Plaintiffs' parents obtained a homeowner's policy on the house from State Farm Fire and Casualty Company ("State Farm").[8]

In addition to its Response to Plaintiffs' Amended Statement of Undisputed Material Facts, Defendant submitted its own statement of facts it contends are undisputed and material.[9] According to Defendant's statement of undisputed material facts,[10] the reverse mortgage required the insurance policy to include a loss-payable clause in favor of the mortgagee.[11] Under that clause, if a covered loss occurred and repair was not economically feasible or if disbursement of the proceeds would impair the mortgagee's security interest, the insurer would first pay the proceeds to the lender to satisfy any outstanding mortgage balance before any funds were paid to the borrower.[12] Plaintiffs did not dispute these facts in their reply.[13] In fact, the reverse mortgage attached to Plaintiffs' Motion reflects the same.[14]

---

[6] R. Doc. 17 at p. 5 ¶ 22.
[7] R. Doc. 2-1 at pp. 1-2 ¶ 3; R. Doc. 7 at p. 2 ¶ 3.
[8] R. Doc. 2-1 at p. 2 ¶ 4; R. Doc. 7 at p. 2 ¶ 4.
[9] R. Doc. 35-23.
[10] *Id.*
[11] R. Doc. 35-23 at p. 3 ¶ 3.
[12] *Id.*
[13] R. Doc. 36.
[14] R. Doc. 15-3 at pp. 3-4.

After the reverse mortgage was executed, Plaintiffs' father passed away.[15] On August 29, 2021, Hurricane Ida struck the property and caused "moderate damage,"[16] after which Plaintiffs submitted a claim to State Farm under the policy.[17] After reviewing the claim, State Farm tendered a check made payable to Janet E. Cazaubon & the Estate of Richard Cazaubon & Champion Mortgage Company its Successors and Assigns.[18] The Cazaubons endorsed the check and mailed it to Nationstar Mortgage LLC d/b/a Champion Mortgage Company ("Nationstar") for the purpose of holding and disbursing the funds as repairs were made.[19] Approximately five months later, Defendant PHH became servicer of the note.[20] Shortly thereafter, Plaintiffs' mother died.[21] State Farm then cancelled the policy and issued a check covering the costs of the remaining repairs, made payable to the Estate of Janet E. Cazaubon, the Estate of Richard Cazaubon, Courtney Guidroz, and PHH.[22] While the home was still under repair, Mortgage Assets Management, LLC, the then-holder of the note, initiated foreclosure proceedings due to the deaths of the Borrowers.[23] The house was then sold at a sheriff's foreclosure sale for $301,000.00.[24]

---

[15] R. Doc. 2-1 at pp. 1-2 ¶ 3; R. Doc. 7 at p. 2. ¶ 3.
[16] R. Doc. 17 at p. 3 ¶ 8; R. Doc. 35-22 at p. 4 ¶ 8.
[17] R. Doc. 17 at p. 2 ¶ 9, p. 3 ¶ 16; R. Doc. 35-22 at p. 4 ¶ 9, p. 6 ¶ 16.
[18] R. Doc. 17 at p. 3 ¶ 10; R. Doc. 35-22 at p. 4 ¶ 10.
[19] R. Doc. 17 at p. 3 ¶ 11; R. Doc. 35-22 at p. 4 ¶ 11. Nationstar was not the first nor the last entity involved with the note. Coast Bank and Trust Company initially held the Note. R. Doc. 35-2 at p. 2. Gulf Coast Bank and Trust Company then assigned the Note to Generation Mortgage Company by allonge. R. Doc. 35-4 at p. 2. Generation Mortgage Company subsequently assigned the Note to Nationstar Mortgage LLC d/b/a Champion Mortgage Company ("Nationstar") by allonge. R. Doc. 35-5 at p. 2. Nationstar then assigned the Note to Mortgage Assets Management, LLC by allonge, while continuing to service the Note. R. Doc. 35-7 at p. 2. Finally, Nationstar transferred servicing of the Note to PHH. R. Doc. 35-14 at p. 2.
[20] R. Doc. 17 at p. 3 ¶ 13; R. Doc. 35-22 at p. 5 ¶ 13.
[21] R. Doc. 17 at p. 3 ¶ 14; R. Doc. 35-22 at p. 5 ¶ 14.
[22] R. Doc. 17 at pp. 3-4 ¶¶ 15-17; R. Doc. 35-22 at pp. 6-7 ¶¶ 15-17.
[23] R. Doc. 17 at p. 4 ¶ 19; R. Doc. 35-22 at p. 7 ¶ 19.
[24] R. Doc. 17 at pp. 4-5 ¶ 21; R. Doc. 35-22 at p. 7 ¶ 21. Both parties acknowledge in their arguments that the foreclosure and sheriff's sale was completed without appraisal. R. Doc. 18 at p. 4; R. Doc. 35 at pp. 7-8.

It is unclear whether there is a dispute with respect to whether there was a remaining balance due on the note after the sheriff's sale. Defendant claims that, after deducting the sheriff's commission and costs of sale, $282,614.77 in proceeds remained and these funds were applied toward the outstanding loan balance, leaving a balance of $45,987.77.[25] Plaintiffs neither allege in their petition, nor do they state in their statement of undisputed material facts, that there was no outstanding loan balance after the funds from the sheriff's sale were applied. Instead, Plaintiffs argue it is Defendant's burden to establish that an outstanding loan balance remains.[26]

Plaintiffs do contend that, at the time of the sheriff's sale, PHH held $37,900.32 in remaining insurance proceeds in an escrow account and applied those proceeds toward the loan balance rather than transmitting them to Plaintiffs.[27] Defendant disputes that amount and asserts that the actual amount of remaining insurance proceeds is $32,116.79.[28]

## II.    Procedural Background

Plaintiffs initiated the instant action by filing a Petition for Damages in the 24th Judicial District Court for the Parish of Jefferson, asserting claims against Defendant for breach of contract, conversion, negligence, fraud, and violations of the Real Estate Settlement Procedures Act ("RESPA").[29] The Petition for Damages was served on Defendant, which then removed the action to the Eastern District of Louisiana, alleging the Court had federal question jurisdiction over the RESPA claim and supplemental

---

[25] R. Doc. 35-22 at pp. 7-9 ¶¶ 21-22; R. Doc. 35-1 at pp. 4-5 ¶¶ 28-33.
[26] R. Doc. 18 at p. 7.
[27] R. Doc. 17 at p. 5 ¶ 22; R. Doc. 35-22 at pp. 7-8 ¶ 22; R. Doc. 35-1 at p.5 ¶ 33.
[28] R. Doc. 35-23 at p. 5 ¶ 26.
[29] R. Doc. 2-1.

jurisdiction over the remaining state-law claims.[30] Defendant later filed its Answer and Affirmative Defenses to the Petition for Damages, generally denying liability and denying most of Plaintiffs' allegations.[31]

Plaintiffs later filed the Motion for Partial Summary Judgment now before the Court, seeking summary judgment only on their conversion claim.[32] Plaintiffs argue it is an undisputed fact they own the remaining insurance proceeds and are therefore entitled to judgment as a matter of law.[33] To address deficiencies in Plaintiffs' original filings, the Court directed Plaintiffs to file an amended statement of undisputed material facts and an amended memorandum in support of their motion for partial summary judgment.[34] Plaintiffs timely complied.[35]

## LEGAL STANDARD

### I.    Summary Judgment Standard

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[36] "An issue is material if its resolution could affect the outcome of the action."[37] When assessing whether a material factual dispute exists, the Court considers "all of the evidence in the record but refrain[s] from making credibility determinations or weighing the evidence."[38] All reasonable inferences are drawn in favor of the nonmoving party.[39]

---

[30] R. Doc. 2.
[31] R. Doc. 7.
[32] R. Doc. 15.
[33] *Id.*
[34] R. Doc. 16.
[35] R. Doc. 17 (Amended Statement of Undisputed Material Facts); R. Doc. 18 (Amended Memorandum in Support of Motion for Partial Summary Judgment).
[36] FED. R. CIV. P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).
[37] *DIRECTV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2005).
[38] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008); *see also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150-51 (2000).
[39] *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

5

There is no genuine issue of material fact if, even viewing the evidence in the light most favorable to the nonmoving party, no reasonable trier of fact could find for the nonmoving party, thus entitling the moving party to judgment as a matter of law.[40]

If the dispositive issue is one for which the moving party will bear the burden of persuasion at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'"[41] If the moving party fails to carry this burden, the motion must be denied. If the moving party successfully carries this burden, the burden of production then shifts to the nonmoving party to direct the Court's attention to something in the pleadings or other evidence in the record setting forth specific facts sufficient to establish that a genuine issue of material fact does indeed exist.[42]

On the other hand, if the dispositive issue is one on which the nonmoving party will bear the burden of persuasion at trial, the moving party may satisfy its burden of production by either (1) submitting affirmative evidence that negates an essential element of the nonmovant's claim, or (2) demonstrating there is no evidence in the record to establish an essential element of the nonmovant's claim.[43] When proceeding under the first option, if the nonmoving party cannot muster sufficient evidence to dispute the

---

[40] *Smith v. Amedisys, Inc.*, 298 F.3d 434, 440 (5th Cir. 2002).

[41] *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263-64 (5th Cir. 1991) (quoting *Golden Rule Ins. Co. v. Lease*, 755 F. Supp. 948, 951 (D. Colo. 1991)).

[42] *Celotex*, 477 U.S. at 322-24.

[43] *Id.* at 331-32 (Brennan, J., dissenting); *see also St. Amant v. Benoit*, 806 F.2d 1294, 1297 (5th Cir. 1987) (citing Justice Brennan's statement of the summary judgment standard in *Celotex*, 477 U.S. at 322-24, and requiring the Movers to submit affirmative evidence to negate an essential element of the nonmovant's claim or, alternatively, demonstrate the nonmovant's evidence is insufficient to establish an essential element); *Fano v. O'Neill*, 806 F.2d 1262, 1266 (5th Cir. 1987) (citing Justice Brennan's dissent in *Celotex*, and requiring the movant to make an affirmative presentation to negate the nonmovant's claims on summary judgment); 10A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 2727.1 (2016) ("Although the Court issued a five-to-four decision, the majority and dissent both agreed as to how the summary-judgment burden of proof operates; they disagreed as to how the standard was applied to the facts of the case." (internal citations omitted)).

movant's contention that there are no disputed facts, a trial would be useless, and the moving party is entitled to summary judgment as a matter of law.[44] When, however, the movant is proceeding under the second option and is seeking summary judgment on the ground that the nonmovant has no evidence to establish an essential element of the claim, the nonmoving party may defeat a motion for summary judgment by "calling the Court's attention to supporting evidence already in the record that was overlooked or ignored by the moving party."[45] Under either scenario, the burden then shifts back to the movant to demonstrate the inadequacy of the evidence relied upon by the nonmovant.[46] If the movant meets this burden, "the burden of production shifts [back again] to the nonmoving party, who must either (1) rehabilitate the evidence attacked in the moving party's papers, (2) produce additional evidence showing the existence of a genuine issue for trial as provided in Rule 56(e), or (3) submit an affidavit explaining why further discovery is necessary as provided in Rule 56(f)."[47] "Summary judgment should be granted if the nonmoving party fails to respond in one or more of these ways, or if, after the nonmoving party responds, the court determines that the moving party has met its ultimate burden of persuading the court that there is no genuine issue of material fact for trial."[48]

Still, "unsubstantiated assertions are not competent summary judgment evidence. The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports the claim.

---

[44] *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1980); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986).
[45] *Celotex*, 477 U.S. at 332-33.
[46] *Id.*
[47] *Id.* at 332-33 n.3.
[48] *Id.*; *see also First Nat'l Bank of Ariz.*, 391 U.S. at 289.

'Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment.'"[49]

## LAW AND ANALYSIS

**I.    Plaintiffs have not come forward with evidence that would entitle them to a directed verdict if it went uncontroverted at trial or that would show they are entitled to summary judgment as a matter of law.**

Plaintiffs seek summary judgment only on their conversion claim.[50] They argue it is undisputed Plaintiffs own the remaining insurance proceeds and that Defendant's application of the insurance proceeds toward the outstanding loan balance remaining after the sheriff's sale constituted an unlawful withholding of property from its owners, entitling Plaintiffs to judgment as a matter of law on their claim for conversion.[51]

To prevail on a cause of action for conversion under Louisiana law, a plaintiff must prove that: (1) he owned, or had the right to possess, certain property; (2) the defendant's possession or misuse of the property was inconsistent with plaintiff's ownership rights; and (3) the defendant's possession or misuse constituted a wrongful taking.[52] The property at issue in this case is insurance proceeds paid by State Farm under a policy insuring property, owned by the Borrowers, that served as security for a reverse mortgage.[53] The Fifth Circuit and Louisiana courts have recognized that money allegedly owed pursuant to an agreement—such as the funds at issue in the present action—may constitute a property interest sufficient to support a conversion claim.[54]

---

[49] *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (first citing *Celotex*, 477 U.S. at 324; then citing *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994); and then quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n.7 (5th Cir. 1992)).
[50] R. Doc. 15.
[51] *Id.*
[52] *Rahman v. Allstate Insurance Co.*, 644 F.Supp.3d 231, 239 (E.D. La. Oct. 25, 2022) (citing *Chrysler Credit Corp. v. Perry Chrysler Plymouth, Inc.*, 783 F.2d 480, 484 (5th Cir. 1986)).
[53] R. Doc. 35-22 at p. 1 ¶ 1, pp. 1-2 ¶ 2, p. 4 ¶ 9, pp. 8-9 ¶ 22.
[54] *See, e.g., Chrysler Credit Corp.*, 783 F.2d at 484; *La. Health Care Grp., Inc. v. Allegiance Health Mgmt., Inc.*, 32 So. 3d 1138, 1142-43 (La. App. 3 Cir. 2010).

To obtain summary judgment, Plaintiffs, as the movants, must demonstrate "that there is no genuine issue as to any material fact and [they are] entitled to judgment as a matter of law."[55] Because Plaintiffs will bear the burden of proof at trial on their conversion claim, they may satisfy their summary judgment burden only by coming forward "with evidence which would 'entitle [them] to a directed verdict if the evidence went uncontroverted at trial.'"[56] If Plaintiffs fail to carry this burden, the motion must be denied.

Plaintiffs will bear the burden of proving at trial the elements of their cause of action.[57] Thus, to meet their initial burden on summary judgment, Plaintiffs must first show it is an undisputed fact they own the insurance proceeds. The Court therefore begins by determining whether Plaintiffs have established it is an undisputed fact that they own, or at a minimum have the right to possess, those proceeds.

Federal Rule of Civil Procedure 56 requires that

[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.[58]

Local Rule 56.1 provides "[e]very motion for summary judgment must be accompanied by a separate and concise statement of the material facts which the moving

---

[55] FED. R. CIV. P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).
[56] *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263-64 (5th Cir. 1991) (quoting *Golden Rule Ins. Co. v. Lease*, 755 F. Supp. 948, 951 (D. Colo. 1991)).
[57] *Rahman v. Allstate Insurance Co.*, 644 F.Supp.3d 231, 239 (E.D. La. Oct. 25, 2022) (citing *Chrysler Credit Corp. v. Perry Chrysler Plymouth, Inc.*, 783 F.2d 480, 484 (5th Cir. 1986)).
[58] FED R. CIV. P. 56(c).

party contends present no genuine issue."[59] The Court's Scheduling Order[60] likewise requires that "every motion for summary judgment must be accompanied by: (1) A separate and concise statement of the material facts which the moving party contends present no issue,"[61] and further requires each party to "make specific reference to record evidence supporting its statement . . . of material facts."[62]

To comply with these rules, Plaintiffs must assert it is an undisputed fact that they are the owners of the remaining insurance proceeds and cite to particular materials in the record supporting that assertion. Plaintiffs' Statement of Undisputed Material Facts contains no separate, concise assertion that it is an undisputed fact they are the owners of the remaining insurance proceeds.[63] Nor do Plaintiffs cite any materials in the record showing it is undisputed that they own the remaining insurance proceeds.[64] Plaintiffs also make no statement that the proceeds from the sheriff's sale were sufficient to satisfy the outstanding loan balance, or even whether any outstanding loan balance remained after the proceeds from the sheriff's sale were applied.[65]

Plaintiffs have failed to comply with Rule 56, Local Rule 56.1, or the Court's Scheduling Order. As a result, Plaintiffs have failed to establish they will be able to prove even the first element of their conversion claim at trial. That failure is compounded by the

---

[59] LR 56.1.

[60] R. Doc. 8. The Court later vacated the original Scheduling Order because Defendant PHH's counsel of record was employed at a firm that had voted to wind down operations and dissolve, rendering compliance with the deadlines functionally impossible. R. Doc. 29 at pp. 1–2. After new counsel enrolled, the Court issued a new Scheduling Order. R. Doc. 38. The Court quotes and cites the original Scheduling Order here because it governed when the instant motion was fully submitted. The Court further notes that the later-issued Scheduling Order used updated language imposing more detailed requirements for summary-judgment filings. R. Doc. 38 at pp. 4–6.

[61] R. Doc. 8 at pp. 4-5.

[62] *Id.* at p. 5.

[63] R. Doc. 17.

[64] *Id.*

[65] *Id.*

Plaintiffs' failure to do so even after they were afforded an opportunity to file an amended statement of material facts.[66] Plaintiffs' Motion for Summary Judgment fails on this basis alone.

Plaintiffs attempt to cure this deficiency by placing the burden on the non-moving Defendant to establish that an outstanding balance remains due on the note.[67] At trial, Plaintiffs will bear the burden of proving they own the funds. As a result, as the moving parties on the motion for summary judgment, Plaintiffs—not Defendant—must first establish it is undisputed fact that they own the funds. Plaintiffs have failed to do so.

Even if Plaintiffs had met their burden, Defendant's opposition and the affidavit attached thereto establish that ownership of the funds remains disputed because the parties disagree as to whether any amount remained due on the note after application of the proceeds from the sheriff's sale. Plaintiffs argue the affidavit submitted by Defendant to show that a genuine dispute of fact exists as to whether an outstanding balance remains due on the note is deficient.[68] Specifically, Plaintiffs argue the affidavit is not competent summary judgment evidence because it was not made under oath, is conclusory, and is unsupported by record evidence.[69] Federal Rule of Civil Procedure 56 requires affidavits submitted as summary judgment evidence "be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."[70] There is no dispute that the affidavit satisfies the requirements of Rule 56. Defendant submitted an affidavit from its Senior Loan Analyst[71]

---

[66] R. Doc. 16. The Order granting Plaintiffs leave to amend also quoted and cited the same language from the Scheduling Order the Court quotes above. *Id.* at p. 1.

[67] R. Doc. 18 at pp. 6-8; R. Doc. 36 at pp. 1-2.

[68] R. Doc. 36 at pp. 1-2.

[69] *Id.*

[70] FED. R. CIV P. 56(c)(4).

[71] R. Doc. 35-1.

11

that was made on his personal knowledge. The affidavit set out facts that would be admissible into evidence, and the Senior Loan Analyst is competent to testify on the matters stated.

Plaintiffs next argue the affidavit is conclusory and insufficiently supported to establish a genuine dispute of material fact as to whether an outstanding balance remained on the loan.[72] In particular, Plaintiffs argue the affidavit is insufficient to create a genuine dispute because the affiant failed to describe the documents he reviewed to support his statement that "[a]fter application of the $282,614.51 in proceeds from the sheriff's sale, $45,987.77 remained outstanding on the [l]oan."[73] The Court disagrees. The affidavit contains a lengthy and detailed explanation of the business records Defendant maintains when servicing a loan, including ""electronic date compilations, imaged documents, and physical documents and records pertaining to the loan [it] services."[74] The affiant also states that, in preparing the affidavit, he reviewed those "relevant business records."[75] In addition, the affiant provides a detailed description of the onboarding process used when PHH takes over servicing a loan, including how PHH incorporates records from prior servicers when it becomes the current servicer.[76] Taken together, these statements sufficiently establish that, at a minimum, a genuine dispute of material fact exists as to whether any outstanding balance remained on the loan.[77]

Finally, Plaintiffs argue they are entitled to summary judgment on their conversion claim based on the Louisiana Supreme Court's decision in *Rushing v. Dairyland Ins. Co.*[78]

---

[72] R. Doc. 36 at pp. 1-2.
[73] *Id.* at p. 2; R. Doc. 35-1 at p. 4 ¶ 32
[74] R. Doc. 35-1 at p. 1 ¶ 2.
[75] *Id.* at p. 2 ¶ 3.
[76] *Id.* at p. 2 ¶ 4.
[77] R. Doc. 35-1.
[78] 456 So. 2d 599 (La. 1984); R. Doc. 18 at p. 6.

In *Rushing*, the Louisiana Supreme Court held that, under the Louisiana Deficiency Judgment Act ("LDJA"), a mortgagee that extinguishes a mortgage through foreclosure and sale without appraisal forfeits its interest in pending insurance proceeds.[79] The court in *Rushing* reasoned that, under the plain language of the LDJA, termination of a mortgage through foreclosure and sale without appraisal extinguishes the debtor's personal obligation by operation of law, regardless of any contrary provision in the mortgage.[80] Plaintiffs argue that, because the mortgagee elected to extinguish the Borrowers' debt through foreclosure and sale of the property without appraisal, *Rushing* extinguished the mortgagee's ownership interest in the insurance proceeds as a matter of law and, in turn, establishes Plaintiffs' ownership interests in those proceeds.[81]

Defendant points out that the holding of *Rushing* was overturned by the 1986 amendment to the LDJA, which specifically permits mortgagees to recover insurance proceeds under a mortgage containing a standard loss payable clause, even when the debt has been extinguished through foreclosure and sale without appraisal.[82] In support, Defendant cites the Fifth Circuit's decision in *BHNO Partners, Ltd. V. Canterbury Joint Venture*,[83] in which the Fifth Circuit upheld the district court's holding that:[84] (1) the terms of the mortgage vested the mortagee with an ownership interest in the insurance proceeds, and (2) the 1986 amendment to the LDJA expressly provides that foreclosure and sale without appraisal does not necessarily extinguish a mortgagee's ownership

---

[79] *Rushing v. Dairyland Ins. Co.*, 456 So.2d 599 (La. 1984).
[80] *Id.*
[81] R. Doc. 18 at pp. 7-8.
[82] R. Doc. 35 at p. 7.
[83] 114 F.3d 1183 (5th Cir. 1997).
[84] *BHNO Partners, Ltd. v. Canterbury Joint Venture*, No. 96-2498, 1996 WL 531832 (E.D. La. Sept. 13, 1996).

interest in insurance proceeds.[85] Specifically, the district court judge in *BHNO Partners* explained that a standard loss payable clause vests the mortgagee with a contractual ownership interest in the insurance proceeds, even after foreclosure and sale without appraisal.[86] Such a clause creates an independent insurance contract between the insurer and the mortgagee, allowing the mortgagee to recover insurance proceeds even if the underlying debt has been extinguished through foreclosure and sale without appraisal.[87]

Defendant cites the terms of the reverse mortgage which contains a standard loss payable clause, specifically reading:

> The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to Lender.

> In the event of Loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss to Lender instead of to Borrower and Lender jointly. Insurance proceeds shall be applied to restoration or repair of the damaged Property, if the restoration or repair is economically feasible and Lender's interest is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied first to the reduction of any indebtedness under a Second Note and Second Security Instrument held by the Secretary on the Property and then to the reduction of the indebtedness under the Note and this Security Instrument. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.[88]

Defendant contends these provisions mirror the type of standard loss-payable clause recognized in *BHNO Partners* as creating a vested contractual interest in insurance proceeds in favor of the mortgagee.[89] In Defendant's view, because the reverse mortgage required the policy to be held by the mortgagee, required loss-payable clauses in the

---

[85] *Id.*
[86] *BHNO Partners, Ltd. v. Canterbury Joint Venture*, 1996 WL 664872 (E.D. La. 1996).
[87] *Id.* at *1.
[88] R. Doc. 35-3 at pp. 4-5. Plaintiffs also attached the reverse mortgage to their Motion. R. Doc. 15-3.
[89] R. Doc. 35 at p. 10.

mortgagee's favor, directed the insurer to pay the mortgagee directly, and authorized application of the proceeds to the underlying debt under specified circumstances, the mortgage vested ownership rights in the insurance proceeds in Defendant rather than Plaintiffs.[90]

The Court agrees with Defendant that the holding of *Rushing* was overturned by the 1986 amendment to the LDJA, which specifically permits mortgagees to recover insurance proceeds under a mortgage containing a standard loss payable clause, even when the debt has been extinguished through foreclosure and sale without appraisal.[91] Even assuming *Rushing* remains relevant in some circumstances, the reverse mortgage itself contains the kind of standard loss payable language that, under the post-1986 framework and the reasoning discussed in *BHNO Partners*, preserves the mortgagee's vested contractual interest in insurance proceeds notwithstanding foreclosure and sale without appraisal.

Further, the mortgage explicitly provided that Defendant could apply the insurance proceeds to the outstanding balance if repair was not economically feasible or if the lender's security interest would be lessened.[92] The Court agrees with Defendant that applying insurance proceeds to repair a home that no longer serves as security for the loan would lessen Defendant's security interest and that, under the terms of the reverse mortgage, the insurance proceeds instead were to be applied to the outstanding debt.

Plaintiffs have failed on all grounds to establish it is an undisputed fact that they own, or have the immediate right to possess, the remaining insurance proceeds for purposes of their conversion claim. As a result, Plaintiffs have not carried their initial

---

[90] *Id.* at pp. 6-11.
[91] *Id.* at pp. 7-8.
[92] R. Doc. 35-3 at pp. 4-5 ¶ 3.

summary-judgment burden of coming forward with evidence that would entitle them to a directed verdict at trial. Even if they had, Defendant's opposition and supporting evidence suffice to create a genuine dispute as to this material fact.

Accordingly,

**IT IS ORDERED** that Plaintiffs' Partial Motion for Summary Judgment[93] is **DENIED**.

**New Orleans, Louisiana, this 27th day of March, 2026.**

_____
**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**

---

[93] R. Doc. 15.